IN THE MATTER OF DANIEL G. GALLOP, AN ATTORNEY AT LAW.

Argued January 13, 1981—Decided March 3, 1981.

*David E. Johnson, Jr.,* Staff Attorney, argued the cause for complainant Disciplinary Review Board.

*Joseph D. Youssouf* argued the cause for respondent (*Dawes & Youssouf*, attorneys).

PER CURIAM.

This matter involves questions concerning the propriety of actions by respondent as a member of the bar of this State in failing to segregate trust monies and to avoid conflicts of interest in dealings with his own clients. District IX Ethics Committee issued a presentment and the Disciplinary Review Board agreed substantially with its findings. We have made an independent examination of the record and our findings are based on that review.

The incidents grew out of an employment relationship as a domestic between Kathleen Brownlee and the respondent's family. Unfortunately Kathleen Brownlee and her husband, Milton Brownlee, Sr., who were parties to some of the transactions, are deceased, and we have had to rely upon various documents and the testimony of respondent, his wife, Milton Brownlee III (son of Kathleen and Milton Brownlee, Sr.) and William Kohl for the factual details. The picture which emerges follows.

Kathleen Brownlee came to work in December 1961 for respondent and his wife as a domestic in their home in Little Silver. In addition to doing general housework two days a week, she would babysit in the evenings. Mrs. Brownlee became a friend of the family. When she had some financial problems relating to the foreclosure of her home, she turned to respondent for assistance. He arranged for temporary and, subsequently, permanent refinancing of her home. He submitted no bill and "was prepared to receive" no compensation.

Respondent asserts that prior to October 28, 1964 he performed other legal services for her and advanced certain funds on her behalf. However, he kept no time records of the legal services rendered up to October 28, 1964. Nor did he estimate the value of these services. Respondent testified that Mrs. Brownlee had been desirous of conveying her home in Lincroft,

New Jersey, to respondent in payment of respondent's legal services, but that he did not believe this was fair. On October 28, 1964, Mrs. Brownlee entered into a trust agreement with respondent. The value of the services before that date is claimed to be the consideration paid by respondent for the interest he received in the trust agreement.

At that time respondent was fully aware that Mrs. Brownlee "had absolute confidence and trust" in him. He did not advise her to seek independent counsel. Instead respondent prepared the trust agreement.

The agreement acknowledged receipt by respondent as trustee of the deed to the Lincroft property. The agreement provided that Mr. and Mrs. Brownlee or the survivor could occupy the property, provided that they maintained the property and paid the taxes, assessments and insurance. In the event the Brownlees died, their son was entitled to live in the home for one year or until his 25th birthday, whichever was later. The son was also given the option to purchase the premises.

Upon expiration of all these conditions the trustee was authorized to sell the property. After deducting all costs and expenses in connection with the title transfer, one-half of the net proceeds was to be paid to the trustee "as compensation for moneys advanced" to Kathleen Brownlee and for legal services rendered. Of the balance $1,000 was to be paid to Mr. Brownlee and the remainder either in a lump sum or in installments of no less than $1,000 per year was to be paid to Milton Brownlee III. The Trustee also had the option, in lieu of selling the property to a stranger, to retain title and pay one-half of the highest offer received. The trust was irrevocable.

At the time the trust was executed, Mr. and Mrs. Brownlee executed and delivered a deed to their home to respondent. No reference was made in the deed to respondent's status as trustee. Respondent testified, "There was no need to." The deed recited that no revenue stamps were required, indicating no consideration had been paid. *L.*1946, *c.* 161, § 15. Although the

deed was recorded, the trust agreement was not. See generally
*N.J.S.A.* 46:16–1.

Mrs. Brownlee died in April 1975 and Mr. Brownlee continued
to live in the home. Mr. Brownlee desired to sell the property
and in 1976 entered into negotiations with William Kohl, a
building contractor. Kohl offered to pay $13,000. When re-
spondent was told of this, he indicated to Mr. Brownlee and his
son Milton, who was then living in the home (he had been
married, left home, separated and then returned), that the
property "should possibly bring more." Yet respondent made no
effort at that time to obtain a better price. He made no
attempt to obtain a real estate appraisal, advertise the property
for sale, or place it with a broker. Respondent claims that the
Brownlees, however, wanted to sell then. Since the price was
less than what respondent felt the property was worth, he
decided to take title.

Respondent entered into an agreement on July 21, 1976 with
Milton Brownlee III. Respondent testified that he had suggest-
ed that Brownlee III might want other counsel, but Brownlee
III did not want to spend the money. Respondent "agreed with
him" as he "really felt it wasn't necessary." Brownlee III
denied any such suggestion was made. In any event Brownlee
III had no independent counsel when the agreement was prepar-
ed. This agreement stated that Brownlee III waived his right
to possession of the Lincroft home and agreed to the sale of the
property to respondent. The agreement further stated that
there was to be deducted from Brownlee III's share $500 for
legal services and expenses "in connection with finalization of
the legal status of the title to the real estate and related
matters," and $1,000 was to be paid to Brownlee, Sr. The
balance of $5,000 was to be paid to Brownlee III per the original
trust agreement.

When the July 21, 1976 agreement was made, a statement of
balance was entered into with Brownlee, Sr. The statement
reflected that, after deducting taxes of $900.32 due for the

period from July 1975 to July 21, 1976, Brownlee, Sr. was paid the net balance of $99.68.

Respondent never segregated the $5,000 which he was to hold in trust for Brownlee III. At some later time Brownlee III raised a question about the interest on the trust fund. Respondent replied that "we would have to work that out when we were ready to formulate a final settlement." Respondent was of the opinion that as trustee it was his obligation to see that Brownlee III spent the money wisely instead of wasting it, but respondent refused to acknowledge that, because he had not segregated those trust funds, he had had the use of that money until payment was made to Brownlee III.

After the July 21, 1976 settlement respondent negotiated the sale of the property to Kohl and entered into a contract on January 14, 1977 for $20,000. The contract contained a provision that any loss by fire prior to passage of title would not affect the transaction and that the purchase price was not based "upon any value attributable to the buildings, the entire value being attributable to the land alone." The house burned down in February 1977 and respondent received the fire insurance proceeds of $13,137. The Kohl transaction was closed in August 1977.

Brownlee III instituted a suit against respondent in the Superior Court, Chancery Division, relating to the subject matter of this proceeding. The Superior Court suit was ultimately settled for $29,500.

Respondent's conduct, as outlined above, contains several ethical transgressions. When negotiating, drawing and executing the trust agreement and the deed, respondent had an inherent conflict of interest. Though he had a personal interest as a beneficiary in the subject matter of the contract with his client, respondent did not even advise Kathleen Brownlee to seek independent counsel when he "should have refused to go forward until such independent legal advice had in fact been obtained." *In re Hurd*, 69 *N.J.* 316 (1976).

Respondent's conduct was not consistent with the mandate of DR5–101(A) which reads as follows:

> Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

Even though his motivation may have been a good faith desire to assist Kathleen Brownlee, knowing that she had complete faith, trust and confidence in him, he should not have become involved in a situation where his personal interests conflicted with those of Kathleen Brownlee and her family. *In re Makowski*, 73 *N.J.* 265 (1977). Yet he made himself trustee and beneficiary of the trust.

It is well settled that all transactions of an attorney with his client are subject to close scrutiny and the burden of establishing fairness and equity of the transaction rests upon the attorney. *Ellenstein v. Herman Body Co.*, 23 *N.J.* 348 (1957); *Dwyer v. Anderson*, 113 *N.J.Eq.* 210 (Ch.1933). If the burden is not satisfied, equity has regarded such transactions tainted so as to constitute a constructive fraud. *Bolte v. Rainville*, 138 *N.J.Eq.* 508 (E. & A.1946). Circumstances comparable to those in this case have been considered to be suggestive of imposition or overreaching giving rise to a presumption of undue influence and invalidity. *Cf. In re Gavel*, 22 *N.J.* 248 (1956); *In re Blake's Will*, 21 *N.J.* 50 (1956). We deem such conduct ethically improper.

A similar transgression occurred when respondent entered into the agreement on July 21, 1976 with Brownlee III. Though respondent claims he mentioned the possibility of another attorney, such a suggestion was made without any enthusiasm, accompanied by the comment that another attorney was not needed. Again the interest of respondent differed from and was contrary to that of his client.

In passing we note that the $500 fee for legal services was charged exclusively against Brownlee III's interest in the property, whereas under the October 28, 1964 agreement such an

expense should have been deducted from the gross sales price and its effect borne by both beneficiaries.

There remains a serious question as to whether respondent violated his fiduciary relationship as trustee by not seeking or making any efforts to obtain a more advantageous price for the property. This suspicion is accentuated because the lower purchase price redounded to his personal benefit. We refer to these items to illustrate the wrongdoing when an attorney does not demand that his client obtain independent advice.

Respondent violated another ethical precept when he failed to segregate the trust funds owing to Brownlee III. Though his obligation to act as a trustee may arguably be considered as not involving an attorney-client relationship, the trust and confidence in respondent developed from the attorney-client relationship was a substantial factor inducing Kathleen Brownlee to designate respondent as trustee. Under these circumstances an attorney should continue to adhere to the ethical standards of a lawyer. Justice Jacobs in *In re Carlsen*, 17 *N.J.* 338, 346 (1955), observed: "An attorney who enters into business ventures with his client does not, in the eyes of his client or the public generally, shed in chameleon fashion his professional standing and obligation and there is no just reason why he should be permitted to do so." We continue to adhere to that view. The trust funds should have been segregated and deposited in an identifiable bank account maintained in this State. DR9–102. Respondent's failure to segregate these monies violated the high ethical standard exacted of an attorney.

We recognize that respondent had gratuitously performed various legal services for the Brownlee family over the years and that he has financially rectified the violation of his trust with Brownlee III. Under these circumstances we conclude that the appropriate discipline is suspension from the practice of law for a period of six months. Respondent shall reimburse the Administrative Office of the Courts for the costs of transcripts arising out of these disciplinary proceedings.

So ordered.

324

*For suspension*—Chief Justice WILENTZ and Justices SUL-LIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*Opposed*—None.

### ORDER

It is ORDERED that DANIEL G. GALLOP of Long Branch be suspended from the practice of law for six months and until the further order of this Court, effective March 23, 1981; and it is further

ORDERED that DANIEL G. GALLOP be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that DANIEL G. GALLOP comply with all of the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.