IN THE MATTER OF ROBERT E. QUINN, AN ATTORNEY AT LAW.

Argued October 20, 1981—Decided December 17, 1981.

*Richard J. Engelhardt*, Staff Attorney, argued the cause for complainant Disciplinary Review Board.

No appearance was made on behalf of respondent.

PER CURIAM.

These disciplinary proceedings were instituted following three separate complaints filed with the District II Ethics Committee for Bergen County, charging the respondent, a member of the bar of this State, with unethical conduct. The District Ethics Committee issued a Presentment after a hearing. *R.* 1:20–2(*o*)(3). The Disciplinary Review Board agreed substantially with the conclusions of the Ethics Committee. Having made an independent examination of the record, we make the findings contained herein.

I

Mr. and Mrs. Joseph P. Randazzo retained the respondent to recover a deposit they had made toward the purchase of a

prefabricated house. They advanced $50 to the respondent to be used for costs necessary to institute the lawsuit. Respondent deposited the funds in his office account and did not use them for filing, service or any other similar court expenses. He never filed the complaint.

During the ensuing six years, Mr. Randazzo constantly telephoned the respondent. From time to time respondent assured him that the matter was pending in court and that he was waiting for a trial date. Finally, respondent told Mr. Randazzo that the case had been called, nobody had been present, and the suit had been dismissed. Respondent said he was going to try to reopen the case and suggested Mr. Randazzo call back in a couple of weeks. When Mr. Randazzo telephoned next, he learned that respondent had moved and was working for an insurance company. Mr. Randazzo subsequently located respondent and told him he was securing another attorney and wanted all the case papers and the $50 advanced for court costs. Respondent agreed to mail the papers and return the $50. Respondent has done neither. The Randazzos, whose claim against the builder of the home was barred by the statute of limitations, sued and secured a judgment against respondent for $2,836, which remains unsatisfied.

Respondent's cavalier and discourteous attitude toward his client was exhibited in his frequent failure to return phone calls and in not notifying his client of his withdrawal from the general practice of law. He compounded the situation by making misrepresentation after misrepresentation. His word was not his bond and he misused the $50 that had been entrusted to him.

## II

Respondent exhibited similar conduct to Michael J. Abair who had retained respondent to handle a negligence claim. Abair

had moved to California when the matter was settled for $900 in November 1978. Respondent mailed the settlement check to Abair with a transmittal letter in which he wrote that upon return of the check "I will then deposit it in my trust account and disburse the $600 net to you." Abair endorsed the settlement check and returned it to the respondent, who never deposited it in his trust account. Instead, respondent endorsed the check and claims he delivered it to his secretary. Telephone calls and registered letters provoked no response. The client's frustration is illustrated in a letter he sent respondent on April 2, 1979. It reads:

> I'm shocked. I've called you at least ten (10) times and sent you a registered letter and you didn't have the decency to reply.
>
> If I don't receive my check for $600 within the next week you will hear from my attorney.

The $600 has not been paid to Abair.

Respondent claims that his secretary was authorized by Abair to borrow the $600 due him. Respondent admits he never confirmed this with his client. We are satisfied that Abair never agreed to use of the settlement proceeds. The correspondence to which we have referred strongly suggests that Abair never consented to the alleged diversion. It would be illogical for Abair to continue to make demands on the respondent if the debtor was respondent's secretary. Indeed, respondent did not produce her as a witness, despite the fact that she would have been an essential witness to support respondent's contention. Moreover, he refused to divulge her name. We do not believe him. He misappropriated these trust funds. As in the Randazzo matter, respondent saw fit to ignore the requests for information from his client.

## III

Barbara Nieves retained respondent to represent her in a claim for personal injuries arising out of an accident. A $5000

settlement was made and deposited in respondent's trust account on March 22, 1978. At that time, respondent was aware that the Bergen County Welfare Board had a lien claim on these funds. Despite that fact, respondent withdrew $1667 as his fee and $3277 as a loan from Mrs. Nieves for three months, a loan that was not evidenced by any writing. It should be noted that the bank account statement for March 1978 indicates the account was overdrawn on three occasions that month.

Mrs. Nieves testified that she had agreed to the loan, since she believed that the entire balance would have to be paid to the Welfare Board. Mrs. Nieves has not received any of these funds. Though respondent made a motion contesting the lien, it apparently was dismissed for lack of prosecution. As of the date of the Disciplinary Review Board hearing, respondent has not obtained a judicial determination of the invalidity of the lien. Respondent has not returned any of these funds to his trust account.

When respondent moved his office without notifying Mrs. Nieves, she filed a complaint with the District Ethics Committee in which she wrote that respondent did not return her phone calls and never informed her that he was leaving general practice.

Respondent's course of conduct with Mrs. Nieves was similar to that he had exhibited with Mr. Randazzo and Mr. Abair. Respondent knew the trust funds were subject to the Welfare Board's lien claims, yet he drew on those funds for his personal use. Moreover, when he decided to borrow the $3277 and discussed this with his client, respondent failed to advise her to seek independent counsel, even though respondent had an inherent conflict of interest. *In re Gallop*, 85 *N.J.* 317, 321–322 (1981); DR 5–101(A). That conflict is brought into sharp focus when attention is drawn to the fact that no note or written agreement evidenced the interest-free loan.

## IV

The Disciplinary Review Board has recommended that respondent be disbarred. We agree. Respondent misappropriated trust funds, see *In re Wilson,* 81 *N.J.* 451 (1979); DR 9–102(B)(4), knowingly made numerous misrepresentations to his clients, see *In re Logan,* 70 *N.J.* 222, 238 (1976); DR 1–102(A)(4), exhibited an indifferent and discourteous attitude to his clients, see *In re Loring,* 73 *N.J.* 282, 290 (1977); DR 1–102(A)(6), and failed to represent his clients zealously, DR 7–101(A). Respondent has not demonstrated any relevant mitigating factors. Nor has he seen fit to appear before us. These ethical infractions occurred continuously over a period of years and established a pattern of wilful neglect and misconduct that should not be permitted to continue.

Respondent's name will be stricken from the Roll.

*For disbarment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*Opposed*—none.

## ORDER

It is ORDERED that ROBERT E. QUINN of Hackensack be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that ROBERT E. QUINN be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with all regulations of the Disciplinary Review Board governing suspended, disbarred and resigned attorneys.