IN THE MATTER OF JAMES D. NICHOLS, AN ATTORNEY
AT LAW.

Argued October 25, 1983—Decided January 10, 1984.

*Colette A. Coolbaugh,* Counsel, argued the cause for complainant Disciplinary Review Board.

*Francis X. Crahay,* argued the cause for respondent (*Giordano, Halleran & Crahay,* attorneys).

PER CURIAM.

This disciplinary proceeding arose as a result of a presentment filed by the District VIII Ethics Committee (Committee) against respondent, a member of the bar, charging him with violations of *DR* 1–102(A)(4) (engaging in conduct involving deceit and misrepresentation) and *DR* 5–104 (engaging in improper conduct in a business transaction with a client). After a hearing, the Disciplinary Review Board (Board) accepted the Committee's finding and recommended that respondent be publicly reprimanded. We agree.

I

Respondent was admitted to the practice of law in 1971; he had an unblemished record until the events giving rise to these proceedings. His present difficulties arise from his improper attempt to purchase property in Bayville, New Jersey from his

client, Noel Scheurich, and Noel's estranged wife, Agnes Scheurich.

In 1976 respondent represented Noel on a charge of possession of a controlled dangerous substance. He also represented Noel's grandmother, Rosalie Scheurich, for a period of time.

Respondent was a personal friend of the Scheurichs. In September 1979, he was a dinner guest at their home in Bayville. At that time the house was listed for sale, with the listing to expire in June 1980. During the dinner, in a casual discussion, respondent expressed an interest in purchasing the Bayville property for rental purposes.

In October or November 1979 the Scheurichs separated and Mrs. Scheurich engaged other counsel to start divorce proceedings. Respondent continued as counsel for Noel. Sometime between the Scheurichs' separation and March 1980, respondent expressed a firm interest in purchasing the Bayville property, which was then vacant. Respondent and the Scheurichs agreed to wait until the real estate listing expired before reaching a formal agreement.

Sometime during this same five-month period, Noel was charged with possession of stolen property. He again was represented by respondent. He was convicted of the charge sometime before March 1980. After his conviction, he went to Mississippi, where he remained until late April. He returned for sentencing in early May and received a suspended sentence.

At this point the respondent and Noel disagree about what occurred. We adopt the Board's findings, affirming the findings of the Committee. The Board found the following relevant facts:

Before Noel Scheurich left for Mississippi in March, he met with the respondent at the Bayville property to discuss certain repairs to the house which the respondent contended were needed. Mr. Scheurich agreed to attend to those repairs. Since that meeting was rushed, Noel Scheurich left the house key with respondent, with the instruction that he drop the key at the Scheurich's family-owned nursing home.

This the respondent did not do, later contending that the key was given to him to take care of repairs and to rent the premises.

On May 20, 1980, a hearing was held on the Scheurichs' divorce action. Noel Scheurich did not attend, but was represented by the respondent. A judgment of divorce was issued on June 19, 1980. Prior to the hearing, on May 12, 1980, the respondent forwarded a proposed contract for the purchase of the Bayville property to Noel Scheurich and to Agnes Scheurich in care of her attorney. That contract specified that the purchase was conditioned on the obtaining of a mortgage by the respondent. That contract was rejected by Agnes Scheurich's attorney because it imposed the burden of repairing and cleaning certain items on Agnes. A second contract was submitted to the parties on May 30, 1980. Although Agnes Scheurich found the contract to be acceptable and signed the document, Noel Scheurich did not agree to it and requested certain changes. The respondent stated that he telephoned Noel Scheurich in Mississippi around July 2, 1980 and explained why the contract could not be altered in the manner suggested. He contended that Mr. Scheurich then agreed to sign and return the contract immediately.

Prior to that conversation, the respondent advertised the Bayville house in the Newark Star Ledger as being for rent. He succeeded in obtaining a tenant. A lease was drafted by the respondent and signed by the tenants, and the tenants moved into the premises on July 1. The respondent did not sign the lease, but he did name himself as the Landlord.

Although Noel Scheurich, who was at that time in Bay St. Louis, had received correspondence and telephone calls between May and July concerning the sale of the Bayville property and the matrimonial matter, he did not receive any written documentation from the respondent concerning the rental of the house, nor did he recall any mention of the rental during his telephone conversations with the respondent. He denied authorizing the rental, and testified that he had no knowledge of respondent's action until mid-August, when Agnes Scheurich called and advised Noel that during the first week in August she had discovered that people were living in the house.

The respondent contended that he assumed the status of a beneficial or equitable owner by at least the July 2 telephone conversation with Noel Scheurich, since Noel had promised to sign the contract. Respondent claimed that he intentionally did not advise either Mrs. Scheurich or her attorney of the rental of the Bayville property despite their obvious interest in same since he believed Mrs. Scheurich would destroy the tenancy because of her anger against her husband resulting from the divorce. He contended that it was his intention to disclose the information to Mrs. Scheurich and her attorney at a later date, and was authorized by Noel Scheurich to rent the property. Additionally, he stated that having a tenant on the premises was beneficial to all parties.

The respondent had collected from the tenants a one month security deposit of $650 and two months rent, for a total of $1950. This money was placed by respondent in his trust account. The funds were turned over to Mrs. Scheurich's counsel when the rental was discovered. This attorney disbursed the funds to the Scheurichs.

The tenants vacated the Bayville property in October after learning that respondent was not the owner. Respondent was unable to obtain financing and the property was eventually sold to another buyer. ["Decision and Recommendation of the Disciplinary Review Board," June 22, 1983, at 2–5]

## II

Upon our independent examination of the record, we agree with the Committee's and the Board's conclusion that respondent's violation of *DR* 1–102(A)(4) and *DR* 5–104 has been clearly and convincingly established. The Committee concluded that respondent rented the property without the authority of either Noel or Agnes. Respondent alleges that it was unfair for the Committee to determine that Noel's testimony on this issue was more credible than his. However, respondent admitted that he intentionally did not advise Agnes or her attorney of the rental. Thus, the Board found, based upon respondent's own admission, that he intentionally deceived Agnes and her lawyer.

The Committee and the Board also determined that respondent's alleged reasons for his deception of Agnes and her attorney had little merit, *i.e.,* (1) he did not tell Agnes of the rental because he was afraid that in her anger against her husband over the divorce proceedings she would destroy the tenancy; and (2) he had the authority to rent the property because he became the equitable owner when Noel allegedly promised to sign the contract in a July 2, 1980 telephone conversation with him.

Similarly, it is evident that respondent intentionally misrepresented to the tenants that he was the owner of the property. Although respondent did not sign the lease, it was prepared by him and listed him as the landlord.

The Board concurred in the Committee's findings that respondent violated *DR* 1–102(A)(4) by intentionally deceiving Agnes and her attorney about the rental of the property and intentionally misrepresenting to the tenants that he was the landlord of the property. We agree and believe that no extended analysis of these incidents is required to equate the Board's findings with a violation of *DR* 1–102(A)(4) nor with respondent's failure to abide by the high standards of conduct demanded of an attorney. *See In re Hurd,* 69 *N.J.* 316, 330 (1976).

Further, the Board concurred with the Committee's finding that respondent had violated *DR* 5–104 because he was improperly involved with his client in a business transaction, *i.e.*, the purchase of the Bayville property, while continuing to represent him in both a criminal and matrimonial matter. The Committee felt that the representation in the matrimonial matter was particularly significant because it involved distribution of the proceeds of the very property involved in the transaction. Additionally, the Committee found that respondent failed to advise Noel to seek other counsel.

It is well-settled that all transactions of an attorney with his client are subject to close scrutiny and the burden of establishing the fairness and equity of the transaction rests upon the attorney. *In re Gallop*, 85 *N.J.* 317, 322 (1981). As we stated in *In re Gavel*, 22 *N.J.* 248, 262 (1956):

> An attorney in his relations with a client is bound to the highest degree of fidelity and good faith. The strongest influences of public policy require strict adherence to such a role of conduct. Since the relationship puts the attorney in a position to avail himself of the necessities of his client and to gain knowledge that can be used to the client's disadvantage, any transactions between attorney and client are presumptively invalid in law—a presumption that can be overcome by only the clearest and most convincing evidence showing full and complete disclosure of all facts known to the attorney and absolute independence of action on the part of the client, *In re Blake's Will (Beers v. McConnell)*, 21 *N.J.* 50 (1956); *Alburger v. Crane*, 5 *N.J.* 573 (1950); *Crocheron v. Savage*, 75 *N.J.Eq.* 589 (E. & A. 1909); Canon 11.

Even if an attorney lacks bad intentions, he should not become involved in a situation where his personal interests conflict with those of his client.

Here the record demonstrates that the respondent was negotiating with his client for the purchase of the Bayville house long before the May 20th hearing on his client's divorce. The client has no recollection of disclosure by the respondent of possible conflicts. Although there was a great deal of correspondence generated in this case, respondent has been unable to offer any documentary proof that he disclosed the possible conflicts to his client or urged him to seek other counsel. Accordingly, we concur with the Board's finding that respondent violated *DR* 5–104.

We are mindful that respondent had an unblemished record before this transaction, nevertheless, our review of the entire record leaves no doubt that the findings of the Board are correct and that a public reprimand is justified and required. Respondent shall reimburse the Administrative Office of the Courts for appropriate administrative costs, including the costs of transcripts.

*For reprimand*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.

### ORDER

The Disciplinary Review Board having filed a report with this Court charging JAMES D. NICHOLS of NEW BRUNSWICK with unprofessional conduct, and good cause appearing;

It is ORDERED that JAMES D. NICHOLS be and hereby is publicly reprimanded and that a permanent record of this reprimand shall be retained in respondent's file; and it is further

ORDERED that JAMES D. NICHOLS reimburse the Administrative Office of the Courts for appropriate administrative costs incurred in this matter, including the cost of transcripts.