IN THE MATTER OF WILLIAM A. PASCOE, AN ATTORNEY AT LAW.

Argued September 14, 1988—Decided November 18, 1988.

*Robyn M. Hill,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Thomas J. Hagner* argued the cause for respondent (*Freeman, Mintz, Hagner & Deiches,* attorneys).

PER CURIAM.

This case arises from a report and recommendation of the Disciplinary Review Board (DRB) that respondent be suspended from the practice of law for one year. The discipline arises from an imprudent and uncounseled business loan that respondent obtained from his clients. Our independent review of the record leads us to agree that it has been demonstrated by the required standard of clear and convincing proof that respondent engaged in unethical and unprofessional conduct and that the recommended period of suspension is warranted. In the circumstances, we add only the requirement that respondent reimburse his clients for the lost funds before restoration to practice.

In 1972, respondent represented two clients in their acquisition of a Camden County liquor store. His clients incurred substantial debt in acquiring the business and the liquor license. Only after delicate negotiations with a prior owner who held a security interest on the business was the attorney successful in negotiating a deal for his two clients. A key feature of the deal was that the prior owner would not call in a loan that was secured by the assets of the business. That loan, however, contained a balloon payment of $120,000 that was due in April 1982. Respondent's skill in these negotiations engendered trust and confidence in his clients.

About the end of 1980, respondent called one of the partners at the store and told him that he had an "investment opportunity" for them that was "tremendous." His clients' version of the events thereafter is that they told him that they had paid $325,000 for their business and could not take chances, especially with their balloon note coming due in early 1982. They made him aware that they were "not interested in anything speculative." He told them that he was so certain of the investment that he would personally guarantee it. "My friend[s,] if there is any risk at all, it will be borne by me."

Based on those assurances, the partners agreed to loan to the respondent's corporation $10,000 at 35% interest with his personal guarantee. When the note came due, respondent's fortunes had taken a drastic turn for the worse. The respondent was substantially retired from the practice of law, and had moved to Florida. What particularly aggrieved his clients was that he had moved without prior notification to them and it was extremely difficult to locate him. Respondent claims to have transferred his office affairs to another attorney in Camden County who could keep in touch with him.

As it turns out, respondent never invested the $10,000 in a business opportunity. It went straight into his firm account. It will profit us little to debate whether he sought the loan intending to invest the funds, because clearly when the loan was made it was in form and substance a personal loan.

It is enough for this disciplinary matter to find that he never advised his clients to obtain independent counsel before making a loan at a time when he was well aware that their balloon payment was coming due. Nor did he provide them with any form of security for the loan.

This conduct is unprofessional. Our Court has previously held that:

All transactions of an attorney with his client are subject to close scrutiny. As Justice Jacobs said, "[a]n attorney who enters into business ventures with his client does not, in the eyes of his client or the public, shed in chameleon fashion

his professional standing and obligation and there is no just reason why he should be permitted to do so." *In re Carlsen,* 17 *N.J.* 338, 346 (1955). *Accord In re Gallop,* 85 *N.J.* 317 (1981). As a general rule, an attorney should refrain from engaging in transactions with a client or former client who has not obtained independent legal advice on the matter. *In re Hurd,* 69 *N.J.* 316 (1976). Here, although respondent had a personal interest in the transaction, he did not even suggest that [the client] seek outside legal counsel. Respondent's argument that his client had many years experience in such matters does not exonerate him. *See In re Honig,* 10 *N.J.* 74, 79 (1952). A lawyer exercising ordinary care for a lender-client under these circumstances almost certainly would have insisted upon security for such a loan. [*In re Barrett,* 88 *N.J.* 450, 452–53 (1982).]

Having concluded that the conduct is unprofessional, we must measure the discipline to be imposed. As noted, the Disciplinary Review Board recommended respondent be suspended for one year. That was not a unanimous recommendation. Two members recommended a six-month suspension. One member was disqualified and another did not participate.

Our precedent supports the one-year suspension. Although in *In re Smyzer,* 108 *N.J.* 47 (1987), an attorney's self-dealing warranted disbarment, the circumstances there were far more severe in terms of consequences to the client and gross misrepresentations to the client. There were multiple instances of such misrepresentation, the advantage taken of especially vulnerable clients. *In re Barrett, supra,* 88 *N.J.* 450 is more analogous in that it involved a $13,000 loan, allegedly to be secured by a second mortgage that the respondent failed to record. That circumstance, together with other instances of misconduct, led to a three-year suspension. *In re Gallop,* 85 *N.J.* 317 (1981), involved one instance of professional self-dealing that was fully rectified and warranted a suspension of six months. Here, however, there has been no rectification. So far as we know, the loan remains unpaid.

Under all the circumstances, we conclude that the appropriate discipline is to suspend respondent for one year and until he makes reparation to his client. We further direct that respondent reimburse the Ethics Financial Committee for appropriate administrative costs, including the cost of production of transcripts.

*For Suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

It is ORDERED that WILLIAM A. PASCOE of COLLINGS-WOOD, who was admitted to the bar of this State in 1951, be suspended from the practice of law for a period of one year, effective immediately and until the further order of this Court; and it is further

ORDERED that the reinstatement of WILLIAM A. PASCOE shall be conditioned upon his making restitution to his clients; and it is further

ORDERED that WILLIAM A. PASCOE reimburse the Ethics Financial Committee for appropriate administrative costs, including the production of transcripts; and it is further

ORDERED that WILLIAM A. PASCOE be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that WILLIAM A. PASCOE comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.