653 A.2d 1127

IN THE MATTER OF PHILLIP F. GUIDONE,
AN ATTORNEY AT LAW.

Argued June 7, 1994—Decided July 29, 1994.

*Walton W. Kingsbery, III,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Francis X. Crahay* argued the cause for respondent (*Tompkins, McGuire & Wachenfeld,* attorneys).

PER CURIAM.

This matter arises from a Decision and Recommendation of the Disciplinary Review Board (DRB) that respondent be suspended from the practice of law for a period of three months. To his credit, respondent admits the gravamen of the complaint concerning his representation of the Lions Club of Chester, New Jersey (the Club), in its sale of a twenty-five-acre tract of land in Mount Olive, New Jersey. His principal dereliction was that, shortly before the contract was signed, he had acquired a twenty-percent interest in the partnership that purchased the property. Yet, for over a year, he continued to represent the Club as seller without disclosing his interest as a purchaser. Although no loss or unfair advantage ensued, respondent deeply regrets the misunderstandings that his dual role in the transaction created.

I

The Club had acquired the tract of land intending to use the site to conduct a fund-raising activity for the Club. The Club was unable to obtain necessary zoning approvals, but the property had increased in value considerably since the time of its purchase. As a result, the Club decided to place the property on the market.

At that time, Frank Adessa, a member of the Club, told respondent to expect a phone call from Frank Torsiello, who was interested in acquiring the property. Respondent received a letter from Torsiello Construction Management (TCM), dated May 8, 1986, making the offer to purchase the property for $1,250,000. The Club accepted that offer because it was the first one to comply with the Club's desired terms, which included the purchase price of $1,250,000, a 10% deposit that would become nonrefunda-

ble after a short period of time, and (subject to subdivision and site-plan approval) closing of title within one year of the signing of the contract. Respondent prepared and sent to TCM a contract of sale. However, disputes about the terms of the sale ensued and respondent entered into negotiations with TCM's counsel.

While the negotiations continued, Adessa disclosed to respondent that he and his brother were partners in TCM. Adessa offered a twenty-percent interest to respondent, which interest respondent accepted in June 1986. Respondent did not disclose his participation in the purchasing partnership to the Club. He continued to negotiate the final terms of the contract, including one that gave the purchaser a ninety-day extension of the one-year deadline for closing.

The contract was executed in July 1986, and a $125,000 deposit was placed in respondent's escrow account. Thereafter, respondent undertook to represent TCM in connection with its application for zoning approvals in Mount Olive Township. He disclosed that representation to the Club, which agreed that it would be in the mutual interests of the Club and TCM that he, being familiar with the zoning bodies in the adjoining community, should undertake that representation. However, in filing the application for developmental approval in Mount Olive Township, respondent failed to disclose on the application the names of the TCM partners holding ten-percent or greater interests, including himself, although that information was requested. More importantly, respondent did not sufficiently inform the Club about the possible adverse consequences of his dual representation of the Club and TCM.

Paradoxically, when in March 1987 the attorney for TCM requested an adjustment of the purchase price because four acres of the unimproved land constituted wetlands and could not be developed, respondent declined even to discuss the matter with the Club, telling the attorney for TCM that all objections to title had to be cleared within three months and that he found "no basis for the reduction of the purchase price."

In or before September 1987, however, respondent communicated to the Club TCM's request for a price reduction and its request for an extension of time to close. Respondent then, for the first time, disclosed to the Club that he had "a position in the partnership." Turmoil broke out at the meeting. Some Club members were deeply disillusioned. Nonetheless, a majority of Club members authorized respondent to proceed with the closing of the property in accordance with the contract, which respondent subsequently did about a month and a half later. Again respondent failed fully to explain to the Club the pitfalls of that conflicting representation. Ultimately, two of the TCM partners sued respondent and the Adessas, seeking a declaratory judgment that they had no interest in the property because they had failed to fulfill their partnership obligations.

## II

■ On this record, the DRB found at a minimum that respondent had not fully complied with *Rule of Professional Conduct* (*RPC*) 1.7, which requires client consent after full disclosure in cases involving conflicts of interest. In his application for site-plan and subdivision approval, respondent did not provide to both parties a full explanation of the risks in his common representation of them as required by the Rule, thus posing a substantial risk of disservice to the Club's interest. In addition, respondent violated *RPC* 1.8(a), which requires an attorney involved in a business transaction with a client or adverse to a client (1) to disclose the relevant facts to the client fully and in writing, (2) to advise the client to consult independent counsel and to give the client a reasonable opportunity to do so, and (3) to obtain written consent from the client. Respondent failed to reveal to the Club his participation as a partner in the TCM venture between June 1986 and September 1987, nor did he advise the Club to seek the advice of independent counsel and obtain the Club's consent. Finally, the DRB, unlike the District Ethics Committee, found that respondent had knowingly concealed his participation in the

transaction in violation of *RPC* 8.4(c), which prohibits attorneys from engaging in dishonesty, fraud, deceit, or misrepresentation. In reaching that conclusion, the DRB relied on the fact that respondent's name had not been typed on the June 1986 letter setting forth the percentage of each TCM partner's interest in the transaction, the fact that his cash contributions to the venture had been made payable to Adessa rather than to TCM, and the fact that he had failed to disclose his business interest to the Club for over one year.

Respondent defended his failure to disclose on the basis that his relationship with the purchasing partnership had never been fully resolved. He pointed out that (1) as of September 1986, long after the Club's contract had been signed, the partners had yet to settle on a name for the partnership, (2) at the closing Torsiello, the lead partner, refused to accept the other partners' cash contributions, and (3) the omission of his own name in the partnership agreement had been inadvertent. Respondent's view was that he had not been obliged to disclose his interest because it had been a minority interest and because all the terms of the transaction had been fully set before he became involved. This is not a sufficient defense. To repeat what we said in *In re Berkowitz*, 136 *N.J.* 134, 642 *A.* 2d 389 (1994), "Ignorance or gross misunderstanding of these rules [of professional responsibility] does not excuse misconduct." *Id.* at 147, 642 *A.* 2d 389.

Our independent review of the record satisfies us that it contains clear and convincing evidence that respondent violated *RPC* 1.7, *RPC* 1.8 and *RPC* 8.4.

### III

The more difficult issue is the appropriate measure of discipline. The purpose of discipline is not to punish the offender but to protect the public. *In re Goldstaub*, 90 *N.J.* 1, 5, 446 *A.* 2d 1192 (1982). Through our disciplinary system, we seek to maintain the public's confidence in the integrity of attorneys. *Ibid.* Consequently, "The severity of discipline to be imposed must

comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigohosian,* 88 *N.J.* 308, 315, 442 *A.* 2d 1007 (1982).

"We have generally found that in cases involving a conflict of interest, absent egregious circumstances or serious economic injury to the clients involved, a public reprimand constitutes appropriate discipline." *In re Berkowitz, supra,* 136 *N.J.* at 147, 642 *A.*2d 389 (citing *In re Porro,* 134 *N.J.* 524, 635 *A.*2d 506 (1993); *In re Doig,* 134 *N.J.* 118, 631 *A.*2d 542 (1993); *In re Woeckener,* 119 *N.J.* 273, 574 *A.*2d 991 (1990); *In re Paschon,* 118 *N.J.* 430, 572 *A.*2d 194 (1990)). Of course, when an attorney's conflict of interest causes serious economic injury to clients, we have not hesitated to impose a period of suspension. *See In re Dato,* 130 *N.J.* 400, 614 *A.*2d 1344 (1992) (imposing one-year suspension on attorney who purchased client's property at below-fair-market price); *In re Gallop,* 85 *N.J.* 317, 426 *A.*2d 509 (1981) (imposing six-month suspension on attorney who took deed to housekeeper's real property to her disadvantage); *In re Hurd,* 69 *N.J.* 316, 354 *A.*2d 78 (1976) (imposing three-month suspension on attorney who counseled client to transfer title to real property to attorney's sister for twenty percent of property's value).

■ Respondent argues that his actions did not cause *any* economic injury to his client, let alone serious economic injury. That is substantially correct. A blue-ribbon committee appointed by the Club itself investigated all the circumstances and concluded, indeed, that the Club had suffered no economic injury as a result of respondent's conduct.

What distinguishes this case from cases warranting only a public reprimand is that the conflicting interest of the attorney was both pecuniary *and* undisclosed. For example, the conflicting interest in *Baldasarre v. Butler,* 132 *N.J.* 278, 625 *A.*2d 458 (1993), in which the attorney represented both sides in a complex real estate transaction, was at least perceived, if not fully appreciated by the clients. *See also In re Nichols,* 95 *N.J.* 126, 469 *A.*2d 494 (1984) (imposing public reprimand on attorney who purchased

client's home while continuing representation of client in two matters); *In re Loring*, 62 *N.J.* 336, 301 *A.*2d 721 (1973) (imposing public reprimand on attorney who represented clients in sale of house while pressing adverse lien on his own behalf on proceeds of sale).

When an attorney has concealed an adverse pecuniary interest from a client, we have been more inclined to impose a period of suspension. In *In re Humen*, 123 *N.J.* 289, 586 *A.*2d 237 (1991), we imposed a two-year suspension in part because the attorney had loaned $40,000 to a client without informing her that he was the mortgagee. That attorney violated *RPC* 1.4 by failing to explain the matter sufficiently to his client, *RPC* 1.8 by acquiring a pecuniary interest adverse to his client without advising her to seek independent counsel, and *RPC* 8.4 by deceiving the client and misrepresenting the mortgage situation to her. However, we have not invariably suspended attorneys for such misconduct. *See In re Paschon, supra*, 118 *N.J.* 430, 572 *A.*2d 194 (imposing public reprimand on attorney who failed to reveal to borrower that attorney's children were members of group of lenders).

On balance, however, we are satisfied that the circumstances of this case warrant a period of suspension. Respondent concealed his adverse pecuniary interest for a long period of time, and that concealment impaired the confidence of many of the members of the Club who had reposed special trust in respondent as an attorney and as an officer of the Club. Furthermore, the amount of money at stake and the complexity of the transaction warranted a heightened sensitivity on the part of respondent. *See Baldasarre, supra*, 132 *N.J.* at 296, 625 *A.*2d 458. In addition, some of the TCM principals complained (perhaps for ulterior reasons) of respondent's conflict of interest as well.

We are mindful of the many tributes to respondent's impeccable character that we have received and the almost-universal respect in which fellow members of the bar and, indeed, the public at large hold respondent. This is the only mark on an otherwise exemplary career. We perceive, however, a qualitative difference between

respondent's conduct and that of the respondents in *In re Berkowitz, supra,* 136 *N.J.* 134, 642 *A.*2d 389, in which the corporate client was aware of the conflict that existed when a member of its law firm sought on his own behalf a zoning change that would have been adverse to the pecuniary interests of the client.

Under the circumstances, we agree with the DRB's recommendation that respondent be suspended for a period of three months.

Respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs.

*For suspension*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

OPPOSED—None.