**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4278-17T3

BELLA'S BAIL BOND, LLC,

      Plaintiff-Respondent/
Cross-Appellant,

and

KATHERINE PARKER,

      Plaintiff,

v.

BRIAN MUHLBAIER, ESQ.,

      Defendant-Appellant/
Cross-Respondent.

_____

      Submitted March 26, 2020 – Decided September 10, 2020

      Before Judges Suter and DeAlmeida.

      On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0471-15.

      Brian Muhlbaier, appellant/cross-respondent pro se.

Steven D. Janel, attorney for respondent/cross-appellant Bella's Bail Bond, LLC.

PER CURIAM

Defendant Brian Muhlbaier, Esq., appeals from the February 6, 2018 order of the Law Division awarding plaintiff Bella's Bail Bond, LLC (Bella's) $18,832.06, plus costs, after the court revised legal services agreements between the parties it found to be unreasonable. Bella's cross-appeals from the provisions of the order granting summary judgment in favor of defendant on its professional negligence claim, and dismissing its breach of fiduciary duty and conversion claims. We affirm in part, reverse in part, and remand.

I.

The following facts are derived from the record. Defendant is an attorney admitted to practice law in this State. Bella's is a licensed provider of bail services. In September 2010, Bella's entered into two legal services agreements with defendant in which defendant agreed to: (1) file applications to vacate forfeitures of bail Bella's had posted on behalf of clients who were no longer in fugitive status; and (2) collect on the judgments he obtained in the forfeiture actions, as well as judgments Bella's had previously obtained in other matters.

For the forfeiture matters, Bella's agreed to pay defendant a contingent fee of one third of the first $500,000 of the amount of the judgments entered in favor

of Bella's, plus costs, regardless of whether funds were collected on the judgments. On the collections matters, Bella's agreed to pay defendant a contingent fee of one third of the first $500,000 of the amount collected on the existing judgments, plus costs. The agreements provide that "costs and attorney[']s fees are calculated across all collections files and are due and payable before the client receives any money."

> As an example[,] if [defendant] obtains two judgments for $500 with costs of $50 for each judgment[,] payments will be applied first to the $100 costs and then to the $300 [sic] attorney fees and then to [Bella's]. If only $400 dollars is collected the client will receive no money. If $400 is received on one of the judgments that $400 will be used to pay [c]osts and [a]ttorney fees across all collection files before [Bella's] receives any money. This agreement reflects the risk and expense [defendant] will incur to prosecute these claims and [Bella's] acknowledges these risks and expenses.

In January 2011, Bella's terminated the agreements. At that time, defendant had completed some, but not all, of the work for which he was retained. While the agreements were in place, defendant kept all of the money he collected on behalf of Bella's on the theory that under the agreements those funds represented a portion of his fee. In addition, at the time of the termination of the agreements, Bella's had paid defendant $2,800 for costs.

3

On April 2, 2015, Bella's filed a complaint in the Law Division alleging defendant provided inadequate legal representation. In addition to other claimed shortcomings, Bella's asserted defendant failed to move to vacate some bail forfeitures prior to the statutory deadline for doing so. In addition, defendant obtained two judgments vacating forfeitures in the name of Bail Group Management, LLC (BGM), an unrelated entity. Bella's also alleged that after it terminated the agreements, defendant refused to turn over its files or provide an accounting of the funds he collected the Bella's judgments. Bella's sought damages for professional negligence, breach of fiduciary duty, breach of contract, misrepresentation, conversion, and unjust enrichment, along with a return of its property, an accounting, and other forms of equitable relief.[1]

The parties cross-moved for summary judgment. On the return date of the motions, the court invalidated the fee provisions of the agreements, finding them grossly unfair to Bella's and contrary to defendant's ethical obligations as an attorney. The court held that a contingent fee must be based on the successful completion of the contemplated representation and, as applied here, merely obtaining a judgment vacating a bail forfeiture is not the successful completion

---

[1] Katherine Parker, managing member of Bella's is also named as a plaintiff. She has not appeared in this matter in her individual capacity.

of the representation contemplated by the agreements. This is so, the court reasoned, because the objective of the client is to collect on the judgment. Thus, the court concluded, it is unreasonable to determine defendant's contingent fee based solely on the value of the judgments he obtained for Bella's. In addition, the court concluded that the fee provisions of the agreements were unreasonable in allocating collected funds first to defendant's fees and costs across all files, resulting in a lack of incentive for defendant to act once his fee was paid.

Relying on the holding in Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528 (1967), the court concluded public policy required it to reform the fee provisions. The court concluded defendant's fee for the work he performed in obtaining judgments would be fixed based on the reasonable value of the services rendered. Thus, defendant was entitled to $1200 for filing six motions at a rate of $200 per motion, and $200 for making one appearance. Because Bella's had paid defendant $2800 for his work on these matters, the court determined Bella's was entitled to a credit of $1400. With respect to collections, the court revised the agreements, setting defendant's fee at one third of the funds received after costs, but without requiring full payment of defendant's fee across all files before payments to Bella's.

A-4278-17T3

The court found it was undisputed defendant collected, at a minimum, $13,113.67 and incurred costs of $2,048.75 on Bella's judgments. On the two miscaptioned matters, the court found defendant collected $10,513.15 and $4,499.69,[2] respectively with costs of $357.67 and $72.00. The court added $13,113.67, $10,513.15, and $4,499.69 to conclude defendant collected a total of $28,626.51. This was a mathematical error, as the sum of those numbers is $28,126.51.

The court then deducted costs of $2,478.42 ($2048.75 + $357.67 + $72 = $2478.42), leaving an amount collected of $26,148.09 on which the fee was to be determined. The court divided that amount by three, concluding defendant was entitled to a reasonable fee of $8,716.03.

Because defendant had collected and retained $26,148.09 on the judgments, the court subtracted defendant's $8,716.03 fee on the collection matters to arrive at $17,432.06 due to Bella's. To $17,432.06 the court added the $1400 due to Bella's with respect to the cost of defendant having filed motions and made an appearance.

---

[2] During the judge's colloquy with counsel prior to issuing his opinion, defendant stated that $5,904.69 was collected in one of the miscaptioned matters. It is not clear from the record how the judge determined $4,499.69 had been collected on that matter.

A-4278-17T3

In the incorrectly captioned cases, the court granted summary judgment to defendant on the professional negligence claim. Finding the facts undisputed on this point, the court held that defendant

> did file something. He did file it, albeit the wrong person, but he did [d]o something. He got that done on those two jobs and actually did a good job on them in terms of the amount of monies that he collected on both those cases.
>
> He did finish the job and there's no objection to amending the caption on either side, so the [c]ourt at this point is, in order to get it done, the [c]ourt's going to enter two Orders . . . amending the captions.[3]
>
> . . . .
>
> I don't see it rising to the level of malpractice, in the sense that it's a caption that's wrong.

The court also concluded defendant's failure to file motions to vacate in several forfeiture matters did not constitute professional negligence. At the time Bella's terminated the agreements, the statutory deadline for filing the motions had not expired. N.J.S.A. 2A:162-8. Thus, defendant's actions did not leave Bella's without an avenue to vacate the bail forfeitures. The court declined to address the remainder of Bella's claims.

---

[3] A representative of BGM was present in the courtroom, acknowledged BGM had no interest in the two matters, and consented to amending the judgments.

On February 6, 2018, the court entered a $18,832.06 judgment in favor of Bella's, without prejudice to Bella's should an audit of defendant's attorney trust account reveal he collected more on the judgments than calculated by the court.[4] The judgment does not mention the remaining counts of the complaint, but the parties agree the court intended to dismiss them.

This appeal and cross-appeal followed. Defendant makes the following arguments for our consideration.

> POINT I
>
> THE COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST DEFENDANT AS A MATTER OF LAW AND ERRED IN ANALYSIS OF THE UNDISPUTED MATERIAL FACTS AS THE ONLY ISSUE ON SUMMARY JUDGMENT WAS THE REASONABLENESS OF THE LEGAL REPRESENTATION AGREEMENTS.
>
> POINT II
>
> THE TRIAL COURT ERRED IN ENTERTAINING JUDGMENT AS DAMAGES WERE UNCERTAIN AND DISPUTED REQUIRING A TRIAL ON THE FACTS.
>
> POINT III
>
> THE TRIAL COURT SHOULD HAVE DISMISSED THE COMPLAINT AND GRANTED SUMMARY

---

[4] The court made a referral to the Office of Attorney Ethics, having concluded defendant's client trust fund records were "wholly inadequate . . . ."

JUDGMENT TO DEFENDANT APPELLANT AS NO DISPUTED MATERIAL FACTS WERE PRESENTED AND THE LAW WAS IMPROPERLY APPLIED.

In its cross-appeal, Bella's raises the following arguments for our consideration.

POINT I

THE LOWER COURT ERRED BY DISMISSING PLAINTIFF'S PROFESSIONAL NEGLIGENCE CLAIMS AGAINST DEFENDANT MUHLBAIER.

POINT II

THE LOWER COURT ERRED BY DISMISSING PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS AGAINST DEFENDANT MUHLBAIER.

POINT III

THE LOWER COURT ERRED BY DISMISSING PLAINTIFF'S CONVERSION CLAIMS AGAINST DEFENDANT MUHLBAIER.

II.

We review the court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and

9

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'"  Prudential, 307 N.J. Super. at 167. We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment."  Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

Although not expressly stated by the court, we consider it to have granted summary judgment to Bella's on its request for equitable relief when it revised the agreements.  Courts have the authority to regulate the conduct of attorneys that "extends to every aspect of the attorney-client relationship, including agreements for fees."  Cohen v. Radio-Elec. Officers Union, 146 N.J. 140, 155 (1996).  We "remain especially vigilant when attorneys and clients contract with each other [and] scrutinize contracts between attorneys and clients to ensure that they are fair."  Ibid.

"An otherwise enforceable agreement between an attorney and client would be invalid if it runs afoul of ethical rules governing that relationship."  Id.

at 156; see also In re Educational Law Center, 86 N.J. 124 (1981).  A retainer agreement may not contain provisions for unreasonable fees or an unreasonable waiver of the clients' rights.  Cohen, 146 N.J. at 156; see also RPC 1.5; RPC 1.16.  The burden is on the attorney to establish the fairness and reasonableness of an agreement.  In re Nichols, 95 N.J. 126, 131 (1984).

Having carefully considered the record, we agree with the court's conclusion that the fee provisions of the agreements were unreasonable in two ways.  First, it was unreasonable for defendant to receive one-third of the amount of judgments entered, regardless of whether he collected any funds on those judgments.  While securing a judgment for a client is consequential, the true value of a judgment is in the amounts actually collected.  Second, it was unreasonable for defendant to collect his fee and costs across all files prior to Bella's receiving any distribution.  Once defendant collected enough to satisfy his fee and costs on all of the judgments, he had no incentive to collect any further funds, given that any amount collected afterwards would be distributed to Bella's.

We find support for the court's conclusions in the holding in Ellsworth Dobbs, on which the court relied.  There, the Court considered the legality of an arrangement in which a real estate broker was entitled to a commission from a

seller when a purchaser brought forward by the broker signed a purchase agreement, whether or not the sale closed. 50 N.J. at 534-43. The Court found the agreement to be "so contrary to the common understanding of men [and women], and also so contrary to common fairness, as to require a court to condemn it as unconscionable." Id. at 555.

We see no error in the court's quantum meruit analysis of defendant's fee for filing motions and making an appearance. See Cohen, 146 N.J. at 162-63 (stating that "when a client discharges an attorney, the attorney may recover the fair value of his or her services, not damages under the retainer agreement"). In addition, apart from the mathematical error noted above, we find the method used by the court to set defendant's fee to be supported by the record, including its correction of the miscaptioned judgments. As a result, we affirm the portion of the February 6, 2018 order granting equitable relief to Bella's through reformation of the agreements.

## III.

In order to establish legal malpractice, a form of professional negligence, a plaintiff must demonstrate: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) that the attorney breached the duty

owed; and (3) that the breach was the proximate cause of any damages sustained. Albright v. Burns, 206 N.J. Super. 625, 632 (App. Div. 1986).

"[A]n attorney is obligated to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise." St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588 (1982). Necessary steps to the proper handling of a case include careful investigation of the facts of the matter, formulation of legal strategy, filing of appropriate papers, and maintenance of communication with the client. Ziegelheim v. Apollo, 128 N.J. 250, 260-61 (1992).

To support its claim of professional negligence, Bella's relies on defendant having obtained two judgments in the name of BGM and his failure to correct those errors until Bella's filed suit against him. Bella's argues that although the court corrected the captions on the judgments, it had to incur unnecessary attorney's fees to obtain that relief. We see no basis to reverse the court's conclusion that defendant's did not constitute professional negligence.

The miscaptioned judgments, while clearly the result of defendant's lack of precision, were easily correctable and Bella's suffered no harm. Defendant did not distribute the amounts collected to BGM, apparently because he knew that the judgments should have named Bella's. He retained the proceeds

pursuant to the agreements' fee provisions, which he would have done in any event. Defendant's delay in turning over the collected funds was occasioned by defendant's reliance on the provisions of the agreements the court later found to be unreasonable. Bella's would have had to seek judicial relief to obtain those funds regardless of the mistake.

We, therefore, affirm the February 6, 2018 order to the extent it granted summary judgment to defendant on Bella's professional malpractice claims.

IV.

The court did not address Bella's breach of fiduciary duty and conversion claims before entering an order dismissing those claims. Those claims are based on more than the issues resolved by the court.

Rule 1:7-4(a) provides a court shall "find the facts and state its conclusions of law . . . on every motion decided by a written order that is appealable as of right . . . ." "[A]n articulation of reasons is essential to the fair resolution of a case." Schwarz v. Schwarz, 328 N.J. Super. 275, 282 (App. Div. 2000). In addition, effective appellate review of a court's decision requires examination of the findings of fact and conclusions of law on which the court relied. Raspantini v. Arocho, 364 N.J. Super. 528, 534 (App. Div. 2003).

We are, therefore, constrained to reverse the February 6, 2018 order to the extent it dismisses Bella's breach of fiduciary duty and conversion claims and remand for further proceedings on those causes of action.

To the extent we have not specifically addressed the parties' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  Either party may move pursuant to Rule 4:50-1 to recalculate the amount awarded to Bella's to account for the mathematical error noted in this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4278-17T3