282 N.J. Super. 315 (1995)
660 A.2d 9
KATHLEEN T. DEGRAAFF, PLAINTIFF-APPELLANT,
v.
ANTHONY J. FUSCO, JR., AND A.J. FUSCO, JR., P.A., LAW FIRM, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 15, 1995.
Decided July 5, 1995.
*317 Before Judges VILLANUEVA, BRAITHWAITE and BILDER.
Appellant Kathleen T. DeGraaff submitted a pro se brief.
Joseph A. Ferrante, attorney for respondents (Mr. Ferrante, of counsel and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Plaintiff appeals from a jury verdict of no cause for action on her complaint against defendant,[1] her former lawyer, to recover all or part of a $15,000 retainer that she paid to him to defend her son. She alleges that the lawyer misrepresented that her son "was in serious trouble with the U.S. Government and that it was *318 going to be very expensive since this was a `Federal' case." She also alleges that the United States Government on their own and without the intervention of the defendant discovered that they had made a mistake and dropped the investigation. Therefore, she alleges that $15,000 is an unreasonable fee. We reverse and remand for retrial.
Plaintiff's son, a military policeman, had been contacted by the United States Secret Service who demanded that he surrender his service weapons due to their ongoing investigation of allegations that he had threatened the life of President Ronald Reagan. Apparently, two co-employees of the son had notified the Secret Service about statements made by the son. Plaintiff's son surrendered his weapons to the Secret Service on September 22, 1988.
After plaintiff made a telephone call to defendant Anthony J. Fusco, Jr. on September 23, 1988, she conferred with him on September 24, 1988. Defendant agreed to accept the case on condition that plaintiff paid a $15,000 retainer. Plaintiff's understanding was that she was to pay the $15,000 so her son would not go to prison. On September 26, 1988, plaintiff paid defendant $15,000 by check.
Ultimately, plaintiff's son was never charged with any offense, and the weapons were returned to the son on September 30, 1988. There is nothing in the record to show the time expended by defendant other than two short conferences, several telephone calls and one or two trips to Morristown to pick up the weapons. In fact, other than defendant's testimony, there is nothing in the record to show that he was in any way responsible for the end of the investigation which obviously was no later than September 30, 1988.
Plaintiff testified that after her very brief appearance at defendant's office to deliver the $15,000 retainer on September 26, 1988, the next time she knew anything was happening was when the Secret Service called her son and asked him to come to Morristown to pick up his weapons. After the weapons were picked up, she made several telephone calls to defendant, but defendant *319 never returned her calls. When she did finally speak with defendant, he kept telling her that he was still working on the case.
Three years later, after defendant had handled other legal matters for plaintiff and her family, plaintiff filed for fee arbitration. Two years after filing for fee arbitration, plaintiff dropped her fee arbitration action on January 6, 1993, to file this lawsuit in the Superior Court for compensatory and punitive damages.
Defendant filed an answer which denied all the allegations and asserted seven affirmative defenses, none of which was raised at the trial. The answer did not include any set-offs as affirmative defenses nor did the answer include a counterclaim. At trial, despite defendant's failure to include any set-offs in the affirmative defenses or file a counterclaim, defendant was permitted to assert set-offs which he ultimately abandoned.
Plaintiff says that defendant promised to furnish a receipt and a retainer agreement but never did. Defendant countered that the $15,000 was an agreed-upon flat fee for services to be rendered up until an indictment was returned. Defendant also stated that plaintiff agreed to the $15,000 fee because she wanted to know what the cap was. At the conclusion of plaintiff's proofs, the court dismissed her claim for punitive damages. After defendant's proofs, the jury found no cause for action.
On appeal, plaintiff argues that the trial court erred when it refused to permit the jury to be informed of R.P.C. 1.5(b), which reads:
When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated in writing to the client before or within a reasonable time after commencing the representation.
It was undisputed that plaintiff had not previously retained the services of defendant and did not even know defendant before this occasion. Plaintiff contends that defendant intentionally failed to comply with R.P.C. 1.5(b) and that had he complied with the rule this case would not be before the court. Plaintiff also contends that she should have been permitted to cross-examine defendant on why he failed to comply with the mandate of R.P.C. 1.5(b). *320 The trial judge ruled that an attorney's compliance with the Rules of Professional Conduct in this case was irrelevant yet he instructed the jury with respect to R.P.C. 1.5(a) regarding the reasonableness of fees.
The court improperly redacted an essential part of R.P.C. 1.5, ruling that R.P.C. 1.5(b) does not apply to an attorney's flat fee. However, this rule makes no exception for a "flat fee." Although the judge meticulously and thoroughly read and quoted all the eight subparagraphs of R.P.C. 1.5(a) in his charge, had the judge continued to read R.P.C. 1.5(b) the jury would have learned that defendant did not abide by the Rules of Professional Conduct and was possibly taking advantage of his own misconduct.
Despite plaintiff's requests, defendant never gave plaintiff a receipt, a retainer agreement or an accounting. Defendant was obligated to communicate the basis or rate of his fee in writing to plaintiff. The very purpose of R.P.C. 1.5(b) is to have the client fully informed as to the terms of the hiring and know without question his or her financial responsibility, as well as to prevent an attorney from overcharging or being able to take a position such as defendant takes in this case. The judge erred when he ruled that an attorney's compliance with this Rule is immaterial.
R.P.C. 1.5(a) states that a lawyer may only charge reasonable fees. Transactions between an attorney and a client are subject to close scrutiny by the court and "the burden of establishing fairness and equity of the transaction rests upon the attorney." Matter of Nichols, 95 N.J. 126, 131, 469 A.2d 494 (1984); In re Gallop, 85 N.J. 317, 322, 426 A.2d 509 (1981). The record herein fails to show any basis for a charge of $15,000; specifically, defendant did not produce any documents or time and expense records, and never attempted to justify the fee other than by saying it was orally "agreed-upon."
Although a nonrefundable retainer is not unethical per se, it is always subject to the overriding precept that any fee arrangement must be reasonable and fair to the client. Clearly, the *321 unused portion of even a nonrefundable retainer should be returned if contravening events should render it unconscionable for the attorney to keep it. Cohen v. Radio-Electronics Officers, 275 N.J. Super. 241, 252, 645 A.2d 1248 (App.Div. 1994) (citation omitted), appeal pending in the Supreme Court.
There is no evidence that defendant was responsible for the Secret Service's termination of its investigation. Defendant's claim that he diffused the situation by arranging the surrender of the weapons to the Secret Service was clearly mistaken because the receipt from the Secret Service indicates they were surrendered by plaintiff's son on September 22, 1988, before defendant was retained.
The court also improperly charged the jury that the main issue was whether or not the fee was reasonable when the first issue was whether there was a fixed fee agreed upon or merely a retainer. The judge also improperly shifted the burden of proof by stating that plaintiff had the burden of proving that the amount charged was unreasonable when actually the burden of establishing fairness and equity rested with the defendant.
Plaintiff also argues that defendant was permitted to use set-offs not asserted in his answer to defeat her claim. In her complaint, plaintiff alleged in substance that she was entitled to recover all or part of the $15,000 retainer. In his answer, defendant denied all the allegations of the complaint and raised seven affirmative defenses none of which included set-offs. Plaintiff did not expect to be confronted with any additional affirmative defenses, set-offs, counterclaims or other surprises at the trial. See R. 4:6-2. Although defendant stated at trial that a counterclaim had been filed, it is not shown in the record. Defendant, after raising claims that he performed various other legal services for plaintiff and her family, abandoned them before summation. The jury was obviously confused by the set-offs claimed by defendant during the trial to the prejudice of plaintiff.
*322 The judge also erred when he told the jurors that they could consider the gratuitous services that defendant rendered to plaintiff and her family for a limited purpose, i.e., as the issue of motivation. However, any other legal services rendered by defendant were irrelevant as to whether there was a fixed fee or a simple retainer and whether $15,000 was a reasonable charge to plaintiff. Once defendant completed his legal work in the federal case, which was no later than ten days after he was retained, his right to the $15,000 or any part thereof would have been established or not established. Furthermore, any claim for other legal services performed by defendant for plaintiff's son, purportedly at plaintiff's request, is clearly barred by N.J.S.A. 25:1-5b. In addition, an attorney cannot apply a fee received for representation in one legal matter to another matter, even for the same client, without the client's permission. Matter of Schwartz, 99 N.J. 510, 520, 493 A.2d 1248 (1985).
Plaintiff's attempts to obtain answers to supplemental interrogatories before trial should not have been summarily denied because the answers were overdue. We do not know what the questions were in the interrogatories so we do not know if they were relevant to this proceeding.
We reverse and remand for a hearing on plaintiff's request for answers to supplemental interrogatories and for retrial before a different judge.
NOTES
[1] Defendants collectively will be referred to as defendant.