[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, a professional corporation, has brought this action against the defendant to recover the sum of $2,419.35 in unpaid legal fees. The defendant filed an answer which denied the contents of the complaint, and added three special defenses to wit:
1. The defendant did not engage the services of the plaintiff pursuant to any contract which contract is also required by the Code of Ethics.
2. The plaintiff is seeking payment for services which were not performed on behalf of the defendant.
3. The plaintiff is seeking compensation for services he acknowledges he could not perform because of a conflict of interest.
The plaintiff offered bills (Exhibit A) to prove its case. CT Page 6852
The defendant on direct examination stated that the plaintiff never sent her a retainer letter. She stated that the plaintiff told her that he could not represent her husband and herself because of a conflict of interest. (The husband of the defendant filed for bankruptcy during the period of representation. The defendant felt that no work prior to filing of the petition should be charged to her).
The court finds for the plaintiff on the second and third special defenses.
The first special defense gives pause. It was denied by the plaintiff.
Exhibit "A" is a copy of the bills sent by the plaintiff to the defendants. The first bill was dated December 1, 1993. The bill recites the handling of two matters dated November 8, 1993 and November 10, 1993. The November 10, 1993 notation was for "Telephone conference with new
client." The bill carried a notation:
 "This bill reflects your balance forward from Kantrovitz Brownstein as of October 28th and for legal services rendered from October 29th through November 30th.
ALL BILLS ARE DUE AND PAYABLE ON RECEIPT."
The bill also noted the sum of $437.50 was paid to the plaintiff on December 1, 1993 from "retainer account."
The letters continued monthly, until the March 1, 1994 shows that the "retainer account" was exhausted. The September 1, 1994 shows a balance of $2,383.25 due the plaintiff.
In the course of the trial, Attorney Brownstein admitted that his office did not send the retainer letter.
 "The Superior Court has inherent and statutory authority to regulate the conduct of attorneys who are officers of the court. . . . It is the duty of the Superior Court to enforce the canons of ethics. . . ." "In its execution of this duty, the Superior Court has broad discretionary power to determine whether an attorney should be disqualified for an alleged breach of confidentiality or conflict of interest." (Citations omitted).
State v. Jones, 180 Conn. 443, 448. CT Page 6853
In Marcus v. DuPerry, 25 Conn. App. 293, the plaintiff sought legal fees pursuant to a retainer agreement. (Cert. granted, Marcus v. DuPerry,220 Conn. 927; rev'd. on other grounds, 223 Conn. 484).
 "Although this is not a disciplinary action and the trial court was not sanctioning the plaintiff, the Superior Court has inherent and statutory authority to regulate the conduct of attorneys, who are officers of the court. . . ."
 "To reach misconduct occurring outside the presence of the court, however, the disciplinary power has to some extent been delegated to local grievance committees. . . ." "Notwithstanding this limitation, it was within the province of the trial court to consider matters of professional conduct in evaluating the evidence on the issue of damages in this case." (Citations omitted). p. 297, 298.
 "The power to discipline an officer of the court `is a summary one inherent in the courts, and exists not to mete out punishment to an offender, but that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession.'" "[T]he inquiry made is `in the nature of an investigation by the court into the conduct of one of its own officers, not the trial of an action or suit. . . .'" The complaint made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. It may even act upon its own motion without complaint, and thus be the initiator of the proceedings.
 This authority makes clear that the trial court has broad powers over both procedural and substantive aspects of attorney disciplinary proceedings. Furthermore, Practice Book § 31 makes it clear that the state's attorney, as well as the grievance committee, may `by written complaint' present attorneys for misconduct not occurring in the actual presence of the court." (Citations omitted).
Grievance Committee v. Goldfarb, 9 Conn. App. 464, 470, 471.
 "The Rules of Professional Conduct are rules of reasons. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the Rules are imperatives, cast in the terms "shall" or "shall not." CT Page 6854 These define proper conduct for purposes of professional discipline. . . . The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules."
[Practice Book] Rules of Professional Conduct, p. 3.
 "Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process. . . ."
[Practice Book] Rules of Professional Conduct, p. 4.
In DeGraaff v. Fusco, 282 N.J. Super. 375, 660 A.2d 9, the plaintiff claimed that the trial court was in error when it refused to permit the jury to be informed of R.P.C. 1.5b. The Appellate Court reversed the trial court.
Rule 1.5(b) reads as follows:
 "(b) When the lawyer has not regularly represented the client, the basis or rate of the fee and the scope of the matter to be undertaken shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation. . . ."[1]
 The use of the verb "shall" carries with it the thrust of the imperative.
The comment to the section reads as follows:
 "When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. . . . A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth. Absent extraordinary circumstances the lawyer should send the written fee statement to the client before any substantial services are rendered, but in any event
CT Page 6855 not later than ten days after commencing the representation."
(Emphasis added).
In the matter at hand, the defendant, on her direct examination, stated that she never received a retainer letter. This was confirmed by Mr. Brownstein, on his direct examination, who stated that his firm started sending such letters in 1995. The rule was amended as of October 1, 1992. The letter (December 1, 1993) confirms that the defendant and her husband were "new clients."
 . . . "The very purpose of R.P.C. 1.5(b) is to have the client fully informed as to the terms of the hiring and know without question his or her financial responsibility, as well as to prevent an attorney from overcharging or being able to take a position such as defendant takes in this case. . . ."
DeGraaff, 660 A.2d, at pp. 11, 12.
The First Special Defense is sustained. The issues are found for the defendant. Judgment may enter for the defendant.
Robert P. Burns Judge Trial Referee