**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0382-21

MCCARTHY GALFY &
MARX, LLC,

     Plaintiff-Respondent,

v.

STEPHEN LEE,

     Defendant-Appellant.

_____

Submitted June 8, 2022 – Decided June 29, 2022

Before Judges Hoffman, Whipple, and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2337-20.

Stephen Lee, appellant pro se.

McCarthy & Soriero, attorneys for respondent (James T. McCarthy, on the brief).

PER CURIAM

Defendant Stephen Lee, pro se, appeals from an August 13, 2021 order, which denied defendant's request to vacate an order and a final judgment by

denying his motion for reconsideration pursuant to Rule 4:49-2 and his request for relief from a judgment or order pursuant to Rule 4:50; defendant offers alternative arguments for the trial court's errors under each Rule. The two underlying orders were a June 25, 2021 order dismissing defendant's counterclaim without prejudice for failure to provide discovery, and a July 9, 2021 order and final judgment granting summary judgment to plaintiff McCarthy Galfy & Marx, LLC. We vacate the entry of judgment and remand for further proceedings.

An attorney-client relationship began in December 2012 when defendant retained Steven A. Caputo in connection with his divorce from Xiaoping Li. The signed retainer agreement required defendant to make an initial payment of $3,000 and a minimum payment of $1,500 for legal services regardless of the amount of time actually spent on the case plus a $250 filing fee. The minimum fee "shall not apply if you and your spouse reconcile, or if the [l]aw [f]irm is discharged from representing you. In that case, all legal fees will be based upon the hourly rates set forth in this [a]greement." Defendant agreed to pay an hourly rate of $325 for Caputo's legal services. The agreement provided Caputo would "send [defendant] itemized bills from time to time." An annual interest rate of twelve percent would be charged on outstanding balances.

A-0382-21

The divorce complaint was filed in January 2013 against Li. However, in September 2013, Shuang Qi Sun, a businessman from China, who had a judgment of approximately $1,040,000 against Li, intervened in the action.

By letter dated November 19, 2015, Caputo notified defendant that the scope of the retention of services changed drastically when Sun filed his intervenor lawsuit and that he was retroactively amending the retainer agreement to include all legal services required to defend against Sun's claim for approximately $1,000,000. On June 14, 2016, Caputo filed an affidavit of service in support of his request for $175,275 in legal fees and $1,354.01 in costs in connection with defendant's divorce action and the intervenor claim. Thereafter, the court entered a judgment of divorce and granted Sun's motion for entry of default judgment against Li. Caputo appealed the judgment on defendant's behalf.

On May 7, 2018, Caputo was transferred to disability inactive status by New Jersey Supreme Court consent order. Plaintiff asserts that it took over Caputo's law firm in May 2018 during Caputo's representation of defendant while the matter was on appeal. On September 4, 2018, we vacated the trial court's ruling on equitable distribution and remanded. Lee v. Xiaoping Li, No. A-5063-15 (App. Div. Sept. 4, 2018).

A-0382-21

On October 7, 2018, Caputo sent a billing statement to defendant for services rendered in connection with the divorce action, including defendant's appeal. The fees at an hourly rate of $395 and costs totaled $197,282.76. Caputo sent a copy to James McCarthy, a partner at plaintiff.

On April 23, 2019, the trial court held a hearing on the remand. Defendant appeared with a Korean interpreter and was represented by plaintiff. They reached an agreement with Sun. Caputo appeared towards the end of the hearing; although, the record is unclear why he appeared. Caputo explained he handled the matter before he had heart surgery and he was on the inactive list because of illness. He did not state on the record that he was associated with plaintiff or defendant. The court entered a consent judgment between Sun and defendant who was represented by plaintiff.

On January 3, 2020, plaintiff submitted a billing statement to defendant for services rendered in defendant's divorce action between October 16, 2018 and July 12, 2019. The lawyer is listed as "JM," presumably McCarthy. The hourly billing rate appears to be $395.[1]

---

[1] The hourly rate is not explicitly set forth. However, $395 appears to be the rate based on dividing the total fees requested by the total number of hours worked: $33,219.50 divided by 84.10 hours.

A-0382-21

By letter dated February 24, 2020 and listing Caputo as "of counsel," plaintiff notified defendant that $144,721.88 in proceeds following the sale of property was due to defendant and his former spouse. Plaintiff stated the sum was in its Attorney Trust Account. Plaintiff further stated:

> As you also know, the legal fee for Mr. Caputo totals $197,282.76 and the legal fee from McCarthy Galfy & Marx, LLC totals $33,930.54, for a total of $231,213.30. While the legal fee exceeds your net proceeds from the sale of the captioned property, as you know, we initially proposed to release $20,000 to you with the balance of $124,721.88 going toward the legal fee of $231,213.30, leaving a balance of $106,491.42. However, you rejected that proposal.
>
> Then, as you will recall, after some discussions, we agreed to release $30,000 to you, with the remaining $114,721.88 going toward the legal fee of $231,213.30, leaving a balance of $116,491.42. While you advised that you agreed to the proposal, you have not responded to this office's attempts to contact you and you have not contacted this office since. Thus, we must assume that you have rejected the above proposal.
>
> As such, the offer to release $30,000 to you is no longer on the table. Thus, the legal fee remains at $231,213.30.
>
> If you do not agree with this, you may file for Fee Arbitration. . . .
>
> If you do not pursue fee arbitration within thirty . . . days, we may decide to file a lawsuit against you regarding the above legal fees.

5

On July 22, 2020, plaintiff filed a complaint against defendant for outstanding legal fees in the amount of $172,922.80 and requested the court permit plaintiff to satisfy $144,721.88 of that sum with the money that was in plaintiff's Attorney Trust Account from the sale of the property. Plaintiff's claims against defendant were for breach of contract and unjust enrichment. Plaintiff did not include a Rule 4:42-9 affidavit of service.[2]

Plaintiff alleged that, during Caputo's representation of defendant, plaintiff took over Caputo's law firm, essentially merging the firms together. While the divorce matter was on appeal, plaintiff took over the Caputo firm and its files.

Defendant pro se filed an answer, affirmative defenses, and counterclaims alleging he was never informed of any merger of the Caputo firm and plaintiff and never consented to representation by plaintiff. Plaintiff never informed defendant of the status of the representation and Caputo never explained why plaintiff was brought into the case or whether he was able to practice law in

---

[2] The District Fee Arbitration Committee for Union County declined jurisdiction pursuant to Rule 1:20A-2(b)(3) because the total fee exceeded $100,000.

A-0382-21

accordance with Rule 1:21-1(a).  Defendant asserted no retainer agreement was signed between himself and plaintiff.

Defendant also pleaded an affirmative defense that he had no contract with plaintiff.  No retainer agreement was signed, and he did not consent to representation from plaintiff.  Defendant asserted he did not have the capacity to contract because his representation was not explained to him and because of his language barrier.  Defendant lastly asserted negligence and misrepresentation counterclaims.  On October 1, 2020, plaintiff filed an answer to defendant's counterclaims.

On April 9, 2021, the court held a Ferreira[3] conference at which defendant appeared pro se with his son to take notes because defendant was supposed to have an interpreter.  The court explained that if defendant wants to pursue a professional malpractice claim against plaintiff, then defendant needs to provide an affidavit of merit (AOM).  Defendant did not have one.  The court ordered

---

[3]  A Ferreira conference is "an accelerated case management conference . . . held within ninety days of the service of an answer in all malpractice actions." Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154 (2003).  "The Ferreira conference is designed to identify and alleviate issues regarding the affidavit of merit [as required by N.J.S.A. 2A:53A-26 to -29.]"  Meehan v. Antonellis, 226 N.J. 216, 221 (2016).

defendant to file an AOM within sixty days in compliance with N.J.S.A. 2A:53A-27.

On June 10, 2021, plaintiff moved for summary judgment with a certification of counsel with exhibits, and a brief in support of its motion. Plaintiff sought from defendant $172,922.80, pre-judgment interest in the amount of $12,954.35 calculated at an annual rate of twelve percent on overdue balances pursuant to Caputo's retainer agreement with defendant, and $698.90 for costs of suit. Plaintiff's exhibits included Caputo's June 14, 2016 Rule 4:42-9 affidavit of service, but did not include one for its representation.

On June 25, 2021, the court entered an order granting plaintiff's unopposed motion to suppress defendant's answer and defenses without prejudice and dismiss defendant's counterclaim without prejudice for failure to provide discovery pursuant to Rule 4:23-5(a)(1). On July 9, 2021, the court entered an order and final judgment granting summary judgment to plaintiff. The court noted: "This matter is decided on the papers as unopposed. No affidavit of merit has been filed and the undisputed material facts show that there was no negligence on [p]laintiff's part."

On July 23, 2021, the court entered an order denying defendant's motion to extend the discovery end date by ninety days because it "granted an

unopposed motion for summary judgment, concluding this litigation." On the same day, defendant proceeding pro se filed a notice of motion to reconsider and vacate the order granting summary judgment to plaintiff.

On August 13, 2021, the court held a hearing on defendant's motion to reconsider and vacate the final order granting plaintiff summary judgment. The court denied defendant's motion to vacate the final judgment for the reasons stated on the record as follows.

> This matter comes before the [c]ourt because on July 9th I entered an order on an unopposed motion for summary judgment.
>
> Now, this case started off by a lawsuit filed by the law firm seeking the attorney's fees that was due pursuant to a retainer agreement.
>
> In response to that lawsuit, [defendant] filed a counterclaim that can only be reasonably interpreted as saying that the attorneys committed negligence or malpractice in their representation.
>
> Now, under our law, any time you sue any kind of a licensed professional and say they didn't do their job properly, you have to file what's called an [a]ffidavit of [m]erit from a similarly trained professional that says that they've reviewed the file and they believe that the attorney violated the standard of care.
>
> Now, that affidavit is required to be filed within [sixty] days, although the [c]ourt can extend that to 120 days.
>
> In this case, the case is well over a year old, an affidavit has never been filed and [defendant] acknowledges today that he still does not have one.

So, that fact was what resulted in the dismissal of his counterclaim.

Now, the motion today can only be considered under two of our court rules.

Rule 4:49-2 is a motion for reconsideration asking the [c]ourt to reconsider the decision that it made.

That rule says that the [c]ourt should only reconsider its decision when it is clear that the [c]ourt was plainly incorrect in its reasoning or the [c]ourt . . . fail[ed] to consider evidence or there's good reason for reconsidering new information.

Based on the arguments of [defendant], I'm not at all convinced that this [c]ourt was mistaken in entering the order of July 9th.

It is clear that he did retain Mr. Caputo who later became part of the other law firm pursuant to a retainer agreement and that work was done pursuant to that retainer agreement for a period of six years.

Certainly, that retainer agreement is a contract and the attorneys are entitled to be paid pursuant to that agreement.

Now, the [c]ourt could also consider this application under [Rule] 4:50 which is relief from a judgment or order.

The reasons to grant a motion under that rule is if the [c]ourt is satisfied that there has been mistake or inadvertence or surprise or excusable neglect.

And there is also a catch all provision that says any other reason justifying relief from the operation of the judgment or order.

Once again, this is a very simple contract action. Work was done pursuant to a contract. The attorneys are parties to the contract and are entitled to be paid.

So, I don't find that there [has] been any mistake, [inadvertence], surprise, or excusable neglect.

A-0382-21

And for all of those reasons, I must respectfully [deny] the notice of motion to vacate the final judgment.

This appeal followed.

We "review the trial court's denial of [a Rule 4:49-2] motion for reconsideration for abuse of discretion." Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We afford substantial deference to the trial court's determination under Rule 4:50, and will not reverse unless it results in a clear abuse of discretion. US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). "The Court finds an abuse of discretion when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 467-68 (citations omitted).

Defendant argues that the trial court erred granting summary judgment to plaintiff because there were numerous genuine issues of material fact. However, because defendant appeals the August 13, 2021 order denying his motion for reconsideration pursuant to Rule 4:49-2 or for relief from a judgment or order pursuant to Rule 4:50, the inquiry here is limited to whether the trial court erred in denying defendant's motion to reconsider and vacate, not whether the court erred in entering the underlying July 9, 2021 order granting summary judgment to plaintiff. Kornbleuth v. Westover, 241 N.J. 289, 299 (2020) (noting we

review "only the judgment or orders designated in the notice of appeal") (quoting 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004)). Under the specific facts of this case, we reverse and remand.

A party making a motion for reconsideration has an opportunity to "convince the court that either 1) it has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010) (internal quotation marks omitted).

With respect to a motion for relief from a judgment or order, Rule 4:50-1 provides:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [Rule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is

no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

In addition, as to motions for summary judgments, "[a] party seeking any affirmative relief may, at any time after the expiration of [thirty-five] days from the service of the pleading claiming such relief, move for a summary judgment or order on all or any part thereof or as to any defense." R. 4:46-1. "A party opposing the motion [for summary judgment] shall file a responding statement either admitting or disputing each of the facts in the movant's statement." R. 4:46-2(b). "[O]pposing affidavits, certifications, briefs, and cross-motions for summary judgment, if any, shall be served and filed not later than [ten] days before the return date." R. 4:46-1. When ruling on a motion for summary judgment, "[t]he court shall find the facts and state its conclusions in accordance with [Rule] 1:7-4. . . ." R. 4:46-2(c).

As to unopposed motions for summary judgment, this court has said:

> [e]ven litigants who have not challenged a motion for summary judgment or any other relief are entitled to a recitation of the reasons for the granting (or denial) of relief. More significantly, even in an uncontested motion, the judge must consider whether undisputed facts are sufficient to entitle a party to relief. It is not enough to suggest that there is no opposition, especially if the facts do not warrant the granting of relief in the first instance.

> [Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 302 (App. Div. 2009).]

Here, although the court did not abuse its discretion in denying defendant's motion to vacate the July 9, 2021 order granting summary judgment to plaintiff, it abused its discretion in denying defendant's motion to reconsider the order because its decision "rested on an impermissible basis." Guillaume, 209 N.J. at 467-68.

Defendant's motion to reconsider sufficiently raised "matters . . . which [he] believes the court has overlooked or as to which it has erred." R. 4:49-2. In his certification accompanying his motion to reconsider, defendant specifically asserted that he did not consent to representation by plaintiff, and that he did not have a signed agreement with plaintiff. Defendant reiterated these assertions before the trial judge. The judge dismissed these assertions even though the record plainly does not show that plaintiff and defendant entered into a retainer agreement.

The court's failure to address the discrepancies surrounding the alleged contract shows that, in reviewing plaintiff's motion for summary judgment, it did not meet its obligation to "consider whether undisputed facts are sufficient to entitle a party to relief." Fisher, 408 N.J. Super. at 302. Indeed, although

defendant failed to timely respond to plaintiff's Request for Admission and a Demand for Answers to Interrogatories, R. 4:22-1, and did not timely file opposing affidavits, certifications, or other documents to plaintiff's motion for summary judgment, R. 4:46-1, the court was still required to determine whether the undisputed facts entitled plaintiff to relief. "It is not enough to suggest that there is no opposition, especially if the facts do not warrant the granting of relief in the first instance." Fisher, 408 N.J. Super. at 302. Therefore, because the trial court's ruling "rested on an impermissible basis," Guillaume, 209 N.J. at 467-68, the court abused its discretion in declining to reconsider the matter.

Furthermore, the trial court did not abide by its duty to enforce court rules and the Rules of Professional Conduct (RPC). R. 1:18; see also N.J. Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 580 (App. Div. 2016) (noting the trial judge has "the duty to enforce the Rules of Professional Conduct under Rule 1:18, [and has] the authority to both raise the potential [rule violation], sua sponte, and to consider the issue at an evidentiary hearing, if the issue could not be resolved on the written record[]").

The record contains a number of potential violations of the court rules and RPC that the court did not raise or investigate.

First, Rule 5:3-5(e)(1) provides:

15

An attorney may withdraw from representation ninety . . . days or more prior to the scheduled trial date on the client's consent in accordance with [Rule] 1:11-2(a)(1). If the client does not consent, the attorney may withdraw only on leave of court as provided in subparagraph (2) of this rule.

See also RPC 1.16(a)(2) (requiring an attorney to withdraw if "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client"). When Caputo was transferred to the disability inactive list, he did not withdraw from representation with defendant's consent or on leave of court. Thus, he may have violated Rule 5:3-5(e)(1) and RPC 1.16(a)(2).

Second, Rule 1:11-2(a)(1) provides, in pertinent part:

[P]rior to the fixing of a trial date in a civil action, an attorney may withdraw upon the client's consent provided a substitution of attorney is filed naming the substituted attorney or indicating that the client will appear pro se. If the client will appear pro se, the withdrawing attorney shall file a substitution. . . .

Defendant specifically asserted that he did not consent to plaintiff's representation in his answer to plaintiff's complaint, in his motion to reconsider and vacate, and at the motion hearing. Notably, plaintiff does not dispute defendant's assertions. Thus, because Caputo and plaintiff did not obtain defendant's consent to effectuate a substitution of attorney, counsel may have violated Rule 1:11-2(a).

16

Third, Rule 1:20-12(f) provides, in pertinent part: "[a]ny attorney transferred to disability inactive status under the provisions of this rule shall be ineligible to practice law and shall comply with [Rule] 1:20-20 governing suspended attorneys. . . ." Thus, when Caputo appeared at the remand hearing even though he was transferred to disability inactive status, he may have violated Rule 1:20-12(f).

Fourth, RPC 1.17 provides:

> A lawyer or law firm may sell or purchase a law practice, including good will, if the following conditions are satisfied:
>
> (a) The seller ceases to engage in the private practice of law in this jurisdiction.
>
> (b) The entire practice is sold to one or more lawyers or law firms.
>
> (c) Written notice is given to each of the seller's clients stating that the interest in the law practice is being transferred to the purchaser; that the client has the right to retain other counsel; that the client may take possession of the client's file and property; and that if no response to the notice is received within sixty days of the sending of such notice, or in the event the client's rights would be prejudiced by a failure to act during that time, the purchaser may act on behalf of the client until otherwise notified by the client.
>
>             . . . .

A-0382-21

(2) In all other circumstances, not less than sixty days prior to the transfer the seller shall cause the notice to be given to the client and the seller shall obtain the written consent of the client prior to the transfer, provided that such consent shall be presumed if no response to the notice is received within sixty days of the date of the sending of such notice to the client's last known address as shown on the records of the seller.

Defendant asserted in his answer and in his motion to reconsider and vacate that he did not consent to plaintiff's representation as a result of Caputo's firm merging with plaintiff. Plaintiff does not dispute this. Because Caputo did not give defendant written notice that he sold or merged his law firm with plaintiff or obtain defendant's consent to do so, counsel may have violated RPC 1.17.

Fifth, Rule 5:3-5(a) provides: "[e]xcept where no fee is to be charged, every agreement for legal services to be rendered in a civil family action shall be in writing signed by the attorney and the client, and an executed copy of the agreement shall be delivered to the client." Defendant asserted three times that he did not have a written agreement with plaintiff, which plaintiff does not dispute. Thus, plaintiff may have violated Rule 5:3-5(a).

Sixth, Rule 4:42-9(b) requires attorneys applying for the allowance of fees to submit an affidavit of services addressing the factors in RPC 1.5(a). Although Caputo provided such an affidavit, plaintiff did not submit one with its

18

complaint or brief in support of its motion for summary judgment. Therefore, plaintiff may have violated Rule 4:42-9(b).

Finally, RPC 1.5(c) provides: "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated in writing to the client before or within a reasonable time after commencing the representation." An attorney may violate this rule if they enter into an oral agreement with a client whom they have never before represented. See DeGraaff v. Fusco, 282 N.J. Super. 315, 319-20 (App. Div. 1995). Here, plaintiff began to represent defendant in May 2018 but did not communicate the basis or rate of fee to defendant before or within a reasonable time after beginning the representation. Rather, the first time plaintiff gave defendant written notice was in its January 2020 billing statement, nearly two years after it began to represent defendant. Thus, plaintiff may have violated RPC 1.5(c).

In sum, because Caputo and plaintiff may have violated the court rules and the RPC, and the record shows plaintiff and defendant may not have had a valid agreement conforming with the rules, the court abused its discretion in declining to reconsider its order granting summary judgment to plaintiff.

"Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the

19

general requirements for contracts and the special requirements of professional ethics." Cohen v. Radio-Elecs. Officers Union, Dist. 3, NMEBA, 146 N.J. 140, 156, (1996). "An agreement violating the ethical rules governing the attorney-client relationship may be declared unenforceable." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). Despite an invalid contract with a client, a law firm may be entitled to recover the reasonable value of its services under a quantum meruit theory. Starkey v. Est. of Nicolaysen, 172 N.J. 60, 67-69 (2002).

It is undisputed that defendant had a written retainer agreement with Caputo that initially set forth an hourly rate of $325 and an interest rate of twelve percent on unpaid balances. Caputo represented defendant from the onset of defendant's divorce proceedings until Caputo was transferred to disability inactive status while the matter was on appeal. When he was transferred to disability inactive status, Caputo did not withdraw with defendant's consent or on leave of court. R. 5:3-5(e)(1); RPC 1.16(a)(2). Plaintiff acquired Caputo's law practice and took over representation of defendant, but Caputo did not inform defendant that he was selling his law firm. RPC 1.17. Defendant did not consent to plaintiff's representation. Caputo and plaintiff did not effectuate a proper substitution of attorney. R. 1:11-2(a)(1). Plaintiff and defendant did not

enter into a retainer agreement.  R. 5:3-5(a); RPC 1.5(c).  Although Caputo was transferred to disability inactive status, he appeared at the 2019 remand hearing. R. 1:20-12(f).

It is also undisputed that, from November 2012 to June 2016, Caputo performed work pursuant to the retainer agreement with defendant.  He filed an appeal on defendant's behalf and filed an affidavit of service in support of his application for attorney's fees.  Moreover, from October 2018 to July 2019, plaintiff performed work on defendant's behalf without a retainer agreement. Plaintiff did not file a Rule 4:42-9 affidavit of service in support of its application.  Thus, plaintiff may be entitled to fees and interest pursuant to Caputo's retainer agreement with defendant as well as reasonable fees under a quantum meruit theory for the work it performed without a retainer agreement with defendant.

Under the unique circumstances of this case, we vacate the entry of judgment and remand for the trial court to determine what plaintiff may be entitled to because of its acquisition of Caputo's firm and under a quantum meruit theory.  The trial court should require plaintiff to submit an affidavit of service in conformance with Rule 4:42-9(b) and RPC 1.5(a).  The trial court should also determine whether the retainer agreement term setting forth a twelve

percent penalty on unpaid balances should also apply to the fees plaintiff generated.

The parties' other claims or allegations are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded for additional proceedings and findings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-0382-21